# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| LAURA J. SEATON, ) | |
| ) | No. 2:10-cv-03186-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CITY OF NORTH CHARLESTON, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on a report and recommendation ("R&R") issued by United States Magistrate Judge Bruce Howe Hendricks. The magistrate judge recommends that the court grant in part and deny in part defendant's motion for summary judgment. For the reasons that follow, the court adopts the R&R, and grants in part and denies in part the motion for summary judgment.

## I.  BACKGROUND

### A. Factual History

As is required on a motion for summary judgment, the court construes the facts of this case in the light most favorable to the non-moving party. Plaintiff Laura Seaton was hired as a firefighter for the City of North Charleston ("the City") on January 30, 2006, and worked there from February 6, 2006 through February 15, 2008. Compl. ¶¶ 7, 9. Seaton does not complain of any harassing behaviors from the beginning of her employment until July 4, 2006.

1

On May 29, 2006, fire captain Bruce Burding, Seaton's supervising officer, issued a Nonconforming Action Report ("NAR")[1] as to Seaton, admonishing Seaton for coming to work with a friend's two-year-old child in her care. Def.'s Mot. for Summ. J. Ex. C.

On July 4, 2006, Burding grabbed and squeezed Seaton's bottom while she hugged him to express sympathy for the recent death of his wife. Pl.'s Opp'n to Mot. for Summ. J. 2. On July 19, 2006, Burding told Seaton, who was eating a Popsicle at the time, that she "shouldn't suck on her popsicle that way because it caused him to have inappropriate thoughts." Id. at 2-3. Seaton understood Burding's comment to be a reference to oral sex. Id. at 3. On July 26, 2006, Burding grabbed Seaton by the neck, pushed her over the back of a couch, and stated that he could "take advantage" of her. Id. at 4. On July 28, 2006, Burding wagged his tongue at Seaton. Def.'s Mot. Ex. D at 4. On July 31, 2006, Burding grabbed Seaton from behind and hugged her. Id. at 5. Also on July 31, 2006, Seaton asked Burding to stop touching her. Pl.'s Opp'n 5. On three occasions in August 2006, Burding walked by or stood near Seaton, pointed at her or held his hands near her, and repeated the phrase "I'm not touching you." Id. at 6. Seaton understood these incidents to be responses to her request that Burding not touch her. Id.

On May 6, 2007, Burding told Seaton that he thought he had seen her wearing a bikini at the beach over the weekend. Id. at 7; Seaton Dep. 123:4-13, Sep. 25, 2012. On the same day, Burding grabbed Seaton's shoulders while she washed dishes at a sink in the firehouse. Def.'s Mot. Ex. E at 2. Seaton reported all of these incidents to Engineer Julie Pennell, Engineer Michael Salvo, and Captain Jonathan Sanders. Id. at 4-7. After the May 6, 2007 incident, Captain Sanders asked Seaton to submit a statement regarding

---

[1] An NAR is a written reprimand issued by supervisors within the City's fire department.

Burding's actions. Pl.'s Opp'n at 8. Ultimately, the City terminated Burding on June 8, 2007 for his "unlawful" sexual harassment of Seaton. Def.'s Mot. Ex. H.

On May 27, 2007, Captain Sanders issued an NAR to Seaton for not washing a fire vehicle at the time that she was ordered to do so. Def.'s Mot. Ex. F. On the same day, Captain Sanders issued an NAR to Seaton for using profanity in a public area of the fire station. Id. Ex. G.

On June 8, 2007, Captain Sanders issued three NARs to Seaton. Two NARs addressed Seaton's use of profanity. Id. Ex. J, L. The third addressed Seaton's failure to wear proper safety shoes as well as insubordination because Seaton had been advised earlier in the day about the fire department's uniform policy. Id. Ex. K. On June 9, 2007, Captain Sanders issued an NAR to Seaton based on Seaton's failure to wear proper shoes. Def.'s Mot. Ex. M. On June 11, 2007, Captain Sanders issued two NARs to Seaton: one for leaving the fire station without permission and one for insubordination regarding her intention to sign leave documentations. Id. Exs. N, O. Because Seaton was out of the office on sick leave beginning June 19, 2007, she did not receive any of these NARs until she returned to work on October 24, 2007. Pl.'s Opp'n at 10.

On October 24, 2007, Seaton was also notified that she would be suspended for one day on October 30, 2007 "due to [her] actions, being disrespectful to a superior officer." Def.'s Mot. Ex. P.

On November 2, 2007, someone in the firehouse moved Seaton's bedding. Id. Ex. Q. On November 5, 2007, another firefighter sat in the chair that Seaton had intended to use. Id. Ex. R. On November 14, 2007, another firefighter stated, in reference to Seaton, "I don't know what we're going to do with her." Id. Ex. S.

On November 21, 2007, Captain Furr issued an NAR to Seaton for yelling at a superior officer while working at the scene of a car accident.  Id. Ex. T.  Seaton allegedly yelled at her superior officer: "STOP F---ING YELLING AT ME, I AM F---ING HURRYING UP!"  Id.  On November 23, 2007, Captain Furr issued another NAR to Seaton, this time for referring to a fellow firefighter as a "YELLOW HELMET PUNK A---."  Id. Ex. U.  In this NAR, Captain Furr recommended that Seaton be terminated because she had "demonstrated that she does not have any respect for her supervisors or fellow firefighters."  Id.  Captain Furr did not feel that Seaton could make the corrective action required to maintain her employment with the City.  Id.

On November 26, 2007, Captain Furr instructed Seaton to wear the yellow helmet that had been issued to her by the City and not the black helmet that she had personally purchased.[2]  Id. Ex. V.

On January 25, 2008, Seaton complained that several chiefs had used profanity and had watched a video "which also included profanity and talking about [w]hores."  Id. Ex. Y.  Seaton was not offended, but noted that "I was thinking at the time that if it could be offensive what are they doing talking like this or playing such a video while on duty."  Id.

On February 13, 2008, Seaton submitted her resignation from the fire department, stating that she was resigning due to the hostile work environment and that February 27, 2008 would be her last day.  Id. Ex. Z.  On February 15, 2008, the City fired Seaton effective immediately.  Id. Ex. AA.

---

[2] Yellow helmets are worn by rookie firefighters and are seen by at least some members of the North Charleston Fire Department as an indicator of inexperience.

4

### B. Procedural History

Seaton originally filed this case in the Charleston County Court of Common Pleas on September 27, 2010, alleging that the City had created a hostile work environment and discriminated against her on the basis of her gender, that she was fired in retaliation for complaining about the harassment, and that the City made defamatory statements about her that were published to potential employers and others in the firefighting community. The City filed a notice of removal in federal court on December 16, 2010, along with a motion to dismiss.

On August 8, 2011, this court granted Seaton leave to amend her complaint, and she filed an amended complaint on August 17, 2011. Seaton's amended complaint asserts hostile work environment and retaliatory discharge claims under Title VII as well as a state-law defamation claim against the City.

The City filed a motion to dismiss or, in the alternative, motion for more definite statement on August 25, 2011, which this court denied on January 30, 2012. The City answered the amended complaint on February 13, 2012. On May 21, 2012, the City filed a motion seeking judgment on the pleadings with regards to Seaton's defamation claim. The court denied the motion for judgment on the pleadings on December 12, 2012.

On March 15, 2013, the city moved for summary judgment on all three of Seaton's claims. The magistrate judge issued her R&R on November 21, 2013, recommending that the court grant summary judgment for the City on Seaton's hostile work environment and defamation claims. The magistrate judge also recommended that the court deny summary judgment on Seaton's retaliation claim. Seaton and the City

each filed objections to the R&R on December 12, 2013. The matter has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

The court is charged with conducting a de novo review of any portion of the R&R to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of the court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

## III.  DISCUSSION

Neither party has objected to the recommendation regarding Seaton's defamation claim.  The court agrees with the magistrate judge that summary judgment should be granted in favor the City as to that claim.  What remains to be considered is whether summary judgment is appropriate as to Seaton's hostile work environment and retaliation claims.  Unsurprisingly, Seaton objects to the R&R to the extent that it recommends granting summary judgment in favor of the City, while the City objects to the R&R to the extent that it recommends denial of summary judgment.

### A.  Seaton's Hostile Work Environment Claim

Seaton objects to the magistrate judge's recommendation that her hostile work environment claim is time-barred.  Specifically, Seaton contends that she has sufficiently established the City's hostile work environment violations under the "continuing violation" doctrine.

Hostile work environment claims are time-sensitive.  "In order to pursue [any] Title VII claim, a plaintiff must first file an administrative charge with the EEOC." Gilliam v. S. Carolina Dep't Of Juvenile Justice, 474 F.3d 134, 139 (4th Cir. 2007) (citing 42 U.S.C. § 2000e-5(e)).  Any subsequent complaint that the plaintiff files in federal court must be based on acts of discrimination that occurred within the applicable limitations period.  Id.  When, as here, the alleged violation is proscribed by state law and the plaintiff has also filed her charge with the appropriate state agency, that limitations period is 300 days preceding the filing of the EEOC charge.  White v. BFI Waste Servs., LLC, 375 F.3d 288, 292 (4th Cir. 2004).  Under the continuing violation doctrine, however, "a Title VII plaintiff seeking to recover for a hostile work environment can

recover for acts occurring even beyond that period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period." Id. at 292-93 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)).  Put another way,

> an incident falling within the applicable limitations period need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment. . . . Under the continuing violation doctrine, none of the [acts falling within the limitations period] had to be discriminatory in and of itself.  It was only necessary for one of these acts to contribute to the behavior relating to the incidents that occurred prior to the limitations period.

Gilliam v. S. Carolina Dep't of Juvenile Justice, 474 F.3d 134, 141 (4th Cir. 2007).

Assuming – in the light most favorable to Seaton – that her March 20, 2008 completion of an EEOC questionnaire amounts to the filing of an EEOC charge, the limitations period for Seaton's hostile work environment claim runs from May 25, 2007 through February 15, 2008, the date that she was fired.  See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 404 (2008) (holding that a completed EEOC intake form or other filing can be deemed a charge under the Age Discrimination in Employment Act "if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf").  Under Gilliam and White, if any of the acts that occurred during the limitations period contributed to the hostile work environment, then the court can consider all events that occurred – both within and without the limitations period – when assessing Seaton's hostile work environment claim.

The question before the court is whether any events that occurred after May 25, 2007 contributed to the allegedly hostile work environment of which Seaton complains.  To prevail on a hostile work environment claim, a plaintiff must show that: (1) she was subjected to unwelcome conduct; (2) the conduct was based on her gender; (3) the

8

conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to the City.  EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Prods., Inc., 308 F.3d 351, 356 (4th Cir. 2002), reh'g en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 540 U.S. 1177 (2004); Spicer v. Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995) (en banc).  In evaluating the third factor, a court must look at the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000).

     As the magistrate judge explained, Seaton has failed to show that any of the events that took place after May 25, 2007 contributed to a hostile work environment.  Specifically, she has not demonstrated that the NARs she received or the November 2007 and January 2008 events about which she complained were motivated by her gender.  See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997) ("[O]nly harassment that occurs because of the victim's gender is actionable.").  Additionally, the conduct that falls within the limitations period is neither severe nor pervasive enough to meet the third factor in the hostile work environment test.  The conduct of which Seaton complains during this period consists of: (1) the ten NARs and the one-day suspension that she received during this time period; (2) an incident in which someone in the firehouse moved her bedding from a locker onto a bunk bed; (3) an incident in which a coworker sat in the chair that she intended to sit in; (4) a coworker's comment that he didn't know

9

what they were going to do with her; and (5) an incident in which several supervisors used profanity and viewed a video that contained profanity and references to prostitutes. This behavior simply does not demonstrate that Seaton's workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). Because none of the incidents that fall within the limitations period rise to the level of contributing to a hostile work environment, the court cannot consider whether of the events that took place outside of the limitations period also contributed to the allegedly hostile work environment. As a result, Seaton's hostile work environment claim cannot be based, even in part, upon Burding's reprehensible behavior.

Because Seaton has failed to demonstrate at least two of the elements of a hostile work environment claim, the court adopts the magistrate judge's recommendation and grants summary judgment in favor of the City as to this claim.

### B. Seaton's Retaliation Claim

The City objects to the magistrate judge's recommendation that the court deny summary judgment on Seaton's retaliation claim. Specifically, the City contends that the magistrate judge erred by: (1) recommending that Seaton's retaliation claim was not time-barred as to events that allegedly occurred before November 7, 2007; (2) recommending that Seaton had made a prima facie case to support her retaliation claim; and (3) recommending that Seaton had provided sufficient evidence to show that her termination was pretextual.

### 1. Seaton's retaliation claim may not be time-barred.

The City argues that Seaton cannot complain of any allegedly retaliatory actions that occurred before November 7, 2007 because she did not submit her discrimination charge to the EEOC until September 2, 2008. Seaton counters that her March 20, 2008 completion of an EEOC questionnaire, which the agency received on March 21, 2008, should be considered her charge for purposes of calculating the 300-day limitations period.

Seaton has filed her September 2, 2008 EEOC charge with the court. That charge states: "THIS PERFECTS THE CORRESPONDENCE ORIGINALLY RECEIVED BY THE COMMISSION ON MARCH 21, 2008." Neither party has supplied Seaton's March 2008 correspondence to the court. As a result, the court cannot evaluate whether the correspondence qualifies as a charge under Holowecki. The City relies on an unpublished opinion from the Western District of Virginia for the proposition that when "a Plaintiff seeking to avail himself of Holowecki does not produce the intake questionnaire he claims was a charge, he has failed to carry his burden of showing timely filing." Vaughn v. Wal-Mart, No. 10-cv-00031, 2010 WL 4608403, at *4 (W.D. Va. Nov. 12, 2010). While the logic of the Vaughn opinion has some appeal, that case is not binding on this court. Moreover, Vaughn was not a case in which the charge specifically identified earlier correspondence received by the EEOC.

Ultimately, the limited evidence before the court raises the question whether the March 2008 correspondence could be deemed a charge under Holowecki. As a result, whether the limitations period in this case ran from May 25, 2007 or November 7, 2007 is a genuine issue of material fact. The court cannot, as a matter of law, determine whether

Seaton's March 2008 correspondence with the EEOC can be deemed a charge because the court has not seen that correspondence. Moreover, some of the allegedly retaliatory behavior of which Seaton complains took place after November 7, 2007. Summary judgment is inappropriate on this basis because it is not clear whether Seaton's claims are time-barred.

### 2. Seaton has made a prima facie case of retaliation.

The City next argues that Seaton has failed to make out a prima facie case of retaliation.

Title VII makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. "To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Under the indirect, burden-shifting method set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973), once a plaintiff establishes a prima facie case of Title VII retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the

plaintiff to demonstrate, by a preponderance of the evidence, that "legitimate reasons offered by the defendant were not its true reasons but were a pretext" for retaliation. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Though the evidentiary burdens shift back and forth under this framework, the plaintiff always bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. Id.

The City does not appear to dispute that Seaton engaged in protected activity. Indeed, the plain language of Title VII and the law of this circuit both indicate that Seaton's complaints about Burden's sexual harassment were protected opposition activity. 42 U.S.C. § 2000e-3(a) (stating that it is unlawful for an employer to discriminate against an employee who has opposed any practice that violates Title VII); Laughlin, 149 F.3d at 259 ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.").

To prevail on a Title VII claim, a plaintiff must also show "the existence of some adverse employment action." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). Title VII's anti-retaliation provision, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). The scope of what constitutes an adverse employment action is not boundless: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotations omitted). Seaton has alleged that

she received an onslaught of NARs in retaliation for reporting Burding's sexual harassment. The NARs that Seaton received qualify as adverse employment actions because such repeated written reprimands could deter a reasonable worker from making or supporting a charge of discrimination. See Medina v. Income Support Div. of New Mexico, 413 F.3d 1131, 1137 (10th Cir. 2005) ("Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action."); Ashby v. Shinseki, No. 11-cv-1050, 2010 WL 6772175, at *7 (D.S.C. Dec. 12, 2012), adopted by 2013 WL 57728 (D.S.C. Jan. 4, 2013).

Finally, Seaton has sufficiently alleged a causal link between the adverse employment action and her protected activity. Seaton received ten NARs shortly after she reported Burding's sexual harassment. The magistrate judge correctly determined that the timing of these NARs, when coupled with Seaton's assertions that she had not previously been subject to this level of scrutiny and that her male coworkers were never subject to this level of scrutiny, established a causal link between the adverse employment actions and Seaton's protected activity. See Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (explaining that "very close" temporal proximity between an employer's knowledge of protected activity and an adverse employment action can be sufficient evidence of causality to establish a plaintiff's prima facie case).

### 3. Seaton has sufficiently demonstrated that the non-retaliatory basis for discipline offered by the City is pretextual.

Finally, the City argues that the magistrate judge erred by finding that the City's neutral reasons for its treatment of Seaton were pretextual.

Once a Title VII plaintiff has made out a prima facie case of retaliation against her former employer, the employer must "set forth, through the introduction of

admissible evidence, a legitimate . . . nonretaliatory basis for the employment action." Darvishian v. Geren, 404 F. App'x 822, 828 (4th Cir. 2010) (citing Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1980). Here, the City has articulated a nonretaliatory basis for the ten NARs issued to Seaton. Specifically, the City states – and Seaton does not deny – that she violated the City's regulations in all of the ways described in the NARs. "An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation." Wells v. Gates, 336 F. App'x 378, 385 (4th Cir. 2009) (collecting cases).

As the City has articulated a legitimate, nonretaliatory reason for its treatment of Seaton, the burden shifts back to Seaton to show that the City's proffered reason is mere pretext. She has done so sufficiently to survive summary judgment. First, Seaton has proffered evidence that several fire captains were not disciplined for using profanity around the time that she was disciplined for use of profanity. Second, she has provided the testimony of the former City fire chief Leonard Judge, who stated in his deposition that use of profanity is generally not a cause for discipline. Leonard Judge Dep. 69:12-15, Jan. 11, 2013 ("I'm not saying that profanity is not – has not been used, is not being used around the fire station. But to be a big issue, I didn't – I didn't see it as being an issue."); id. 69:16-70:8 (explaining that while use of profanity can be a terminable offense, it often is not cause for termination). Third, Seaton has asserted that she received far more NARs after she reported Burding's sexual harassment, even though her conduct was unchanged.

In short, Seaton has provided enough evidence for her retaliation claim to survive the City's motion for summary judgment. Ultimately, a jury should decide whether the

many NARs Seaton received in 2007 were issued in retaliation for her reporting Burding's unlawful conduct.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the magistrate judge's R&R, ECF No. 86, and **GRANTS IN PART and DENIES IN PART** the City's motion for summary judgment, ECF No. 74.  The court **GRANTS** summary judgment in favor of the City as to Seaton's defamation and Title VII hostile work environment claims.  The court **DENIES** summary judgment as to Seaton's Title VII retaliation claim.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 30, 2013**
**Charleston, South Carolina**